IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 MAR 17  P 3: 20

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | |
|---|---|
| SYLVIA WINGARD as the Administrator of the Estate of GEORGE WINGARD,<br><br>    Plaintiff,<br><br>v.<br><br>PFIZER INC., a Delaware Corporation; PHARMACIA CORPORATION, a Delaware Corporation; MONSANTO, COMPANY, a Delaware Corporation; G.D. SEARLE, LLC., a Delaware Corporation; ALEX DUMOULIN, JR and fictitious Defendants A, B, C and D being those persons, firms or corporations whose actions, inactions, fraudulent suppression, fraud, scheme to defraud and/or other wrongful conduct caused or contributed to the Plaintiff's injuries and damages, and whose true names and identities are presently unknown to the Plaintiff but will be substituted by amendment when ascertained,<br><br>    Defendants. | CIVIL ACTION NO:<br><br>2:06CV254-D<br>Pending Transfer to MDL-1699<br>(In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation) |

## NOTICE OF REMOVAL

TO:   United States District Court For The Middle District Of Alabama

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Pfizer Inc. ("Pfizer"), Pharmacia Corporation ("Pharmacia," also improperly captioned as Monsanto Company, *see* ¶ 9, *infra*), and G.D. Searle, LLC (collectively, the "Removing Defendants") with full reservation of all defenses, file this Notice of

Removal of this civil action from the Circuit Court of Covington County, State of Alabama, to the United States District Court for the Middle District of Alabama, Northern Division, and state as follows:

As detailed below, the Eleventh Circuit recently spoke definitively against the "common strategy" employed by plaintiffs in pharmaceutical products liability cases such as this one of fraudulently joining individual non-diverse pharmaceutical representatives in an effort to defeat federal court jurisdiction. *Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005). Here as well, the presence of a pharmaceutical representative defendant, Alex Dumoulin, in this action does not defeat this Court's diversity jurisdiction. Indeed, Mr. Dumoulin *never* detailed the prescription medicine at issue here to any healthcare provider or patient in Alabama, let alone to Plaintiff or his physician. Accordingly, Mr. Dumoulin's presence cannot defeat this Court's diversity jurisdiction.

1. The Removing Defendants, as well as the purportedly non-diverse defendant, Mr. Dumoulin, are the only named defendants to the action filed in the Circuit Court of Covington County, State of Alabama, bearing the caption *Sylvia Wingard, as Administrator of the Estate of George Wingard v. Pfizer Inc., et al.*, Civil Action #CV-06-32. On February 13, 2006, Plaintiff filed this action on behalf of George Wingard, deceased, for alleged "injuries resulting in a stroke at

[*sic*] death" allegedly "caused by Bextra," an FDA-approved prescription medication.[1] Compl. ¶ 1 (attached hereto as Exhibit 1).

I. **THIS COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION.**

2. This Court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (1) the amount in controversy exceeds $75,000.00, exclusive of interest and costs; and (2) the requisite diversity of citizenship exists between Plaintiff and the properly joined Defendants.

A. **The Amount-In-Controversy Requirement Is Satisfied.**

3. Based on the allegations in Plaintiff's Complaint, the amount in controversy plainly exceeds $75,000.00, exclusive of interests and costs. Indeed, Plaintiff expressly alleges that "[t]he amount sought herein exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this matter." *Id.* ¶ 31.[2] Plaintiff seeks unlimited compensatory and punitive damages with respect to her decedent's alleged "substantial injuries including, among other things, a stroke resulting in death." Compl. ¶ 28; *e.g., id.* ¶ 28 (alleging "Defendants' negligence caused Plaintiff to expend substantial sums of

---

[1] On September 6, 2005, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order, pursuant to 28 U.S.C. § 1407, establishing an MDL proceeding in the Northern District of California (MDL-1699) for cases related to Bextra. *See In re Bextra & Celebrex Mktg., Sales Pracs. & Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005). Accordingly, this case is expected to become a "tag-along" action transferable to MDL-1699 pursuant to Rules 7.4 and 7.5 of the Rules of Procedure of the JPML. *See Rules of Procedure of the Judicial Panel on Multidistrict Litig.*, 199 F.R.D. 425 (J.P.M.L. 2001). Defendants will soon be filing a Motion to Stay all proceedings in this Court pending transfer.

[2] As shown below, this Court does otherwise has jurisdiction over this matter because there is complete diversity between Plaintiff and the properly joined defendants.

money for medical, hospital, and funeral expenses"); *id.* ¶ 104 (seeking "both compensatory and punitive" damages); *id.* at 21 (unnumbered "WHEREFORE" paragraph) (seeking unlimited damages). Given that Plaintiff seeks an unspecified amount of damages, the Removing Defendants only need to show that the amount in controversy more likely than not exceeds the jurisdictional amount requirement. *See, e.g., Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 948-48 (11th Cir. 2000). Given the severity of the injuries alleged and the other allegations in Plaintiff's Complaint, this requirement is plainly satisfied. *See, e.g., id.; Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000).

    4. In particular, as noted, Plaintiff alleges that Bextra caused the death of George Wingard, and seeks damages as allowed by Alabama's wrongful death statute, Ala. Code § 6-5-410. While Defendants deny any wrongdoing, in other product liability cases in which liability is found, Alabama juries routinely render verdicts in excess of $75,000.00, exclusive of interests and costs, as evidenced by the cases attached to this Notice as Exhibit 2. Likewise, as the Eleventh Circuit has recognized, appellate courts have upheld verdicts in excess of $75,000.00, in cases where a medical product was alleged to have caused injury, but not death. *See generally Toole v. McClintock*, 999 F.2d 1430 (11th Cir. 1993) (citing award of $400,000.00 in compensatory and $5,000,000.00 in punitive damages in a product liability case); *Benford v. Richards Med. Co.*, 792 F.2d 1537 (11th Cir.

4

1986) (citing award of $165,000.00 in compensatory and $100,000.00 in punitive damages in a medical product liability case). Moreover, in other personal injury actions in which plaintiffs alleged lesser injuries, this Court has recognized that "[i]t is not uncommon in these circumstances for Alabama juries to award compensatory damages in excess of the jurisdictional prerequisite, even before punitive damages are considered." *Hester v. Bayer Corp.*, Civil Action 01-D-1301-N, slip op. at 8-9 (M.D. Ala. Dec. 21, 2000) (DeMent, J.) (denying motion to remand and holding that defendant had met its burden of demonstrating that the amount in controversy more likely than not exceeded $75,000.00 when complaint alleged "serious muscle problems" caused by a prescription medication) (attached hereto as Exhibit 3). Therefore, given that Plaintiff seeks unlimited compensatory and punitive damages based on her allegation that Bextra® caused Mr. Wingard's death, the amount in controversy plainly exceeds $75,000.00.

**B.    Complete Diversity Of Citizenship Exists Between The Properly Joined Parties.**

5.    Upon information and belief, Plaintiff Sylvia Wingard is, and at the time she filed this suit was, and George Wingard was at all relevant times, a resident and citizen of the State of Alabama. *See* Compl. ¶¶ 1, 2; 28 U.S.C. § 1332(c)(2).

6.    Defendant Pfizer was at the time of filing of this action, and still is, a corporation existing under the laws of Delaware, with its principal place of

business in New York. *See id.* ¶ 6. Accordingly, Pfizer, is not now, nor was it at the time of filing this action, a citizen of Alabama for purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1).

7. Defendant Pharmacia was at the time of filing of this action, and still is, a corporation existing under the laws of Delaware, with its principal place of business in New Jersey. *See* Compl. ¶ 4. Accordingly, Pharmacia Corporation is not now, nor was it as the time of filing of this action, a citizen of Alabama for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

8. Defendant Searle was at the time of filing of this action, and still is, a limited liability company whose sole member is (and was) Pharmacia & Upjohn Company LLC, which is, and at the time of the filing of this action was, a limited liability company whose sole member is (and was) Pharmacia & Upjohn LLC, which is, and at the time of the filing of this action was, a limited liability company whose sole member is (and was) Pharmacia Corporation which is, and at the time of the filing of this action was, a corporation existing under the laws of the State of Delaware, having its principal place of business in the State of New Jersey. Thus, for jurisdictional purposes, Searle is a citizen of Delaware and New Jersey. *See e.g., Rolling Greens MHP, LP v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (holding that a "limited liability company is a citizen of any state of which a member of the company is a citizen"); *see also* 28 U.S.C. §

1332(c)(1). Thus, Searle is not now, nor was it at the time of filing this action a citizen of Alabama for purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1).

9. In 1933, an entity known as Monsanto Company ("1933 Monsanto") was incorporated under the laws of Delaware. On March 31, 2000, a subsidiary of 1933 Monsanto merged with Pharmacia & Upjohn, Inc, and 1933 Monsanto changed its name to Pharmacia Corporation. *Cf.* Compl. ¶ 5. As stated in Paragraph 7, *supra*, Pharmacia is (and was at the time of the filing of this action) a corporation existing under the laws of the State of Delaware, having its principal place of business in the State of New Jersey. Accordingly, Defendant Monsanto Company, is not now, nor was it at the time of filing this action, a citizen of Alabama for purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1).

10. The Complaint also names an additional defendant, Mr. Dumoulin, and alleges that he is a "resident" of the State of Alabama. *See* Compl. ¶ 7. Even assuming *arguendo* that Mr. Dumoulin is an Alabama citizen, his presence does not destroy diversity jurisdiction because he is fraudulently and improperly joined and/or misjoined in an attempt to defeat diversity and prevent removal. As such, his citizenship is disregarded in determining diversity jurisdiction exists. *See, e.g.*, *Legg*, 428 F.3d at 1325; *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998).

11. The Complaint also purports to state claims against unnamed, fictitious defendants identified as defendants A through D. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

## II. THE PHARMACEUTICAL REPRESENTATIVE DEFENDANT IS FRAUDULENTLY JOINED.

12. The doctrine of fraudulent or improper joinder prevents a plaintiff from defeating federal diversity jurisdiction by simply naming in-state defendants where there is no reasonable possibility the plaintiff can establish a cause of action against that resident defendant. *See, e.g., Triggs*, 154 F.3d at 1287; *Crowe v. Coleman*, 113 F.3d 1536, 1540 (11th Cir. 1997).

13. To defeat a removing defendant's allegation that non-diverse parties have been fraudulently joined, plaintiffs must have a "reasonable basis" upon which they could recover against the non-diverse party; a "merely theoretical" basis is not enough. *Legg*, 428 F.3d at 1324-25 & n.5. Here, as in *Legg*, there is no "reasonable basis" that Plaintiff can establish a cause of action against Mr. Dumoulin.

14. In *Legg*, plaintiffs brought a pharmaceutical product liability action in Alabama state court against several pharmaceutical companies and three pharmaceutical representatives. Defendants removed the case to federal court contending that the plaintiffs fraudulently joined the pharmaceutical

representatives. Recognizing the improper "common strategy employed" in pharmaceutical product liability cases such as this in which plaintiffs "name local parties, often … local sales representatives, as defendants, thus defeating [a defendant's] right to remove a case to federal court," the Eleventh Circuit reiterated that the "removal process was created by Congress to protect defendants." *Id.* at 1320, 1325. In *Legg*, as here, the defendants submitted a sworn affidavit from one of the defendant pharmaceutical representatives that he never detailed or marketed the drug in question. *Id.* at 1324-25. Applying Alabama law, the appeals court found "no reasonable possibility" that the named pharmaceutical representatives could be found liable on plaintiffs' claims. *Id.*; *see also id.* at 1325 n. 5 (stating the potential for legal liability "must be reasonable, not merely theoretical") (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 1992)). The Eleventh Circuit emphasized: "As the Supreme Court long ago admonished, 'the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court.'" *Id.* (quoting *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907)).

15.   Fraudulent joinder may be shown by a lack of a factual or legal basis for a plaintiff's claims; in this case, Plaintiff's claims fail for both reasons. *See,*

*e.g.*, *Owens v. Life Ins. Co. of Ga.*, 289 F. Supp. 2d 1319, 1323-24 (M.D. Ala. 2003).

16. Plaintiff asserts causes of action against defendants generally for negligence, defective design, failure to warn, breach of express warranty of merchantability, breach of implied warranty of merchantability, fraud, negligent misrepresentation and wrongful death. Plaintiff appears to base her claims on the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD").[3] *See generally* Compl. Plaintiff alleges that Mr. Dumoulin is liable because he "called on physicians, including Plaintiff's physician on numerous occasions at which times [he] presented fraudulent information regarding the safety and efficacy of Bextra and its harmful side effects, and/or fraudulently suppressed material information regarding the safety and efficacy of Bextra and its harmful side effects, and/or placed Bextra in the stream of commerce by providing Plaintiff's physician(s) samples of the drug Bextra." Compl. ¶ 11; *see also id.* ¶¶ 12-13. Because there is no reasonable possibility in law or fact that Plaintiff could recover against Mr. Dumoulin, that defendant has been fraudulently joined and his presence in this action cannot defeat removal.

---

[3] It appears that any negligence and defective design claims are brought pursuant to the AEMLD. Even if they are not, however, they still fail. The AMELD also includes wrongful death actions. *See Casrell v. Altec Indus. Inc.*, 335 So. 2d 128 (Ala. 1976).

10

### A. No Factual Basis Exists For Plaintiff's Claims Against The Pharmaceutical Representative Defendant.

17. Plaintiff has fraudulently and improperly joined Mr. Dumoulin because the Complaint fails to allege a sufficient factual basis for the claims against him—and there is no such basis. Indeed: *Mr. Dumoulin has never detailed Bextra to any physician or patient in the State of Alabama, let alone to George Wingard.* See Affidavit of Alex Dumoulin (Mar. 15, 2006), attached here as Exhibit 4, at ¶¶ 4, 8; *see also Legg*, 428 F.3d at 1324-25 (grounding fraudulent joinder analysis on sales representative's affidavit).

18. As made clear in his Affidavit, Mr. Dumoulin did not call on or communicate information about Bextra to anyone in Alabama, much less to Plaintiff's decedent or his unnamed prescribing physician. *See* Dumoulin Aff. ¶¶ 4, 8. Accordingly, there is no factual basis for any claim against him.

19. Moreover, in any event, the Complaint fails to allege (1) that Mr. Dumoulin called on or communicated with Plaintiff's decedent or with his alleged prescribing physician, (2) what information Mr. Dumoulin allegedly misrepresented to or concealed from Plaintiff's decedent or to Plaintiff's decedent's prescribing physician, and (3) that Plaintiff's decedent or her alleged prescribing physician relied on such information. *See* Compl. ¶ 11-13; *see generally In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 (S.D.N.Y. 2001) (finding fraudulent joinder where such specific allegations are lacking).

11

Because Plaintiff not only does not allege these claims, but would have no "reasonable possibility" of recovering if she had because they are demonstrably false, Plaintiff's Complaint is factually insufficient and Mr. Dumoulin is fraudulently joined. *See Legg*, 428 F.3d at 1324-25.

### B. Plaintiff Fails To State Legally Cognizable Claims Against The Pharmaceutical Representative Defendant.

20. In addition to Mr. Dumoulin having no factual connection to this action, Plaintiff also fails to state any legally sufficient basis for relief against Mr. Dumoulin. *See, e.g., Legg*, 428 F.3d at 1324-25; *Crowe*, 113 F.3d at 1540.

#### 1. Plaintiff Fails to State Legally Cognizable Claims Against the Pharmaceutical Representative Defendant for Violation of the AEMLD and for Breach of Warranty.

21. Even if there were a factual connection between Mr. Dumoulin and Plaintiff's claims—and there is none—Plaintiff cannot establish a viable claim against Mr. Dumoulin for violation of the AEMLD or for breach of express or implied warranty because pharmaceutical representatives are not the requisite manufacturers or sellers of prescription medicines. *See, e.g., Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987). To establish liability under the AEMLD, "the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product." *Id.* (citing *Atkins v. American Motors Corp.*, 335 So. 2d 134 (Ala. 1976)). Pharmaceutical representatives under Alabama law are not

considered to be sellers or suppliers of the prescription drugs they detail. *See Rezulin*, 133 F. Supp. 2d at 287; *see also* Dumoulin Aff. ¶ 2, 6-7.

22.  Nor can Plaintiff state a claim for breach of express or implied warranty against Mr. Dumoulin—even if he had detailed Bextra in Alabama (which he did not)—because Mr. Dumoulin is not a "seller" under Alabama law. *See* Ala. Code §§ 7-2-313(1), 7-2-314(1), 7-2-315, 7-2-103(1)(d) (express and implied warranty claims refer to the creation of warranties by the "seller"); *Rezulin*, 133 F. Supp. 2d at 286 ("seller" who makes warranties about a prescription medicine is the "pharmaceutical manufacturer," and not the pharmaceutical representative); *e.g.*, Dumoulin Aff. ¶ 7. Accordingly, Mr. Dumoulin cannot be liable under the AEMLD or a warranty theory.

    **2.    Plaintiff Fails to Establish Legally Cognizable Claims for Failure to Warn.**

23.  Plaintiff's failure to warn claims likewise fail. *See* Compl. ¶¶ 26, 41-51. First, in products liability actions premised on a negligence (or wantonness) theory, "[t]he defendants must be either the manufacturer or seller of the injury-producing article." *Norton Co. v. Harrelson*, 176 So. 2d 18, 20 (Ala. 1965). As explained above, pharmaceutical representatives in general, and Mr. Dumoulin in particular, are neither manufacturers nor sellers of prescription medicines. *See* § I(B)(1), *supra*; Dumoulin Aff. ¶¶ 6-7. Second, under Alabama law, a prescription drug manufacturer satisfies its duty to warn under the AEMLD or

13

negligent failure to warn claims by distributing an adequate warning to the prescribing physician. *See, e.g., Stone v. Smith, Kline & French Labs*, 447 So. 2d 1301, 1305 (Ala. 1984) (holding that an adequate warning to the prescribing physician, but not to the ultimate consumer, is sufficient as a matter of law to avoid liability under the AEMLD in the case of prescription drug); *Gurley v. American Honda Motor Co.*, 505 So. 2d 358, 361 (Ala. 1987) (holding that a manufacturer fulfills its negligent failure to warn cause of action, as a matter of law, by distributing the product with reasonable warnings): *Purvis v. PPG Indus., Inc.*, 502 So. 2d 714 (Ala. 1987). Stated simply, under Alabama law, pharmaceutical representatives have no duty to warn plaintiffs directly. As another court has remarked in this context, there is "no authority for the proposition that the sales representatives, as opposed to the manufacturer, had any duty to warn" and, as noted, "any duty to warn that it or its sales representatives had was owed not to Plaintiffs, but to Plaintiffs' physicians" under the learned intermediary doctrine. *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000) ("Plaintiffs have no cause of action against the named sales representatives for failure to warn.") (citing *Wyeth Labs., Inc. v. Fortenberry*, 530 So. 2d 688, 691 (Miss. 1988) (denying motion to remand an action naming the manufacturer and non-diverse pharmaceutical representatives as defendants); *see Rezulin*, 133 F. Supp. 2d at 282. Further, in any event, Plaintiff's Complaint fails to state sufficient facts to support

a failure to warn claim against Mr. Dumoulin for failing to Plaintiff's decedent or his physician. Plaintiff fails to allege any facts to demonstrate that Mr. Dumoulin had any unique or specialized knowledge or information independent of the information contained in the FDA-approved physician package insert which he had an obligation to disclose to Plaintiff's decedent's prescribing physician. Consequently, in no event could Plaintiff state a viable cause of action against Mr. Dumoulin for failure to warn Plaintiff, Plaintiff's decedent, or Plaintiff's decedent's physician.

### 3. Plaintiff's Fraud-Based Claims Fail.

24. Plaintiff also cannot sustain his claims against Mr. Dumoulin for fraudulent and negligent misrepresentation because the Complaint fails to comply with the "particularity" requirement of Rule 9(b). *See* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud be stated with particularity); Ala. R. Civ. P. 9(b), comment (stating that the Alabama rule is identical to the federal rule). Particularity "requires a plaintiff in pleading fraud to distinguish among defendants and specify their respective role in the alleged fraud." *McAllister Towing & Trans. Co. v. Thorn's Diesel Serv. Inc.*, 131 F. Supp. 2d 1296, 1302 (M.D. Ala. 2001). The pleading requirements are not satisfied if plaintiff fails to "distinguish among Defendants and specify their respective role in the alleged fraud." *Id.* Thus, a plaintiff must allege matters such as time, place, content and speaker of the

allegedly fraudulent misrepresentations. *Id.*; *Estate of Scott v. Scott*, 907 F. Supp. 1495, 1498 (M.D. Ala. 1995) ("time, place and purported contents of the false representations" must be pled); *see* Ala. R. Civ. P. 9(b), Committee Comments on 1973 Adoption, subdivision (b) (stating plaintiff must show the "time, place and the contents or substance of the false representation, the fact misrepresented, and the identification of what has been obtained"). Mere "general allegations do not meet the Rule 9(b) requirements." *Rezulin*, 133 F. Supp. 2d at 284.

25. Plaintiff fails to plead with the requisite particularity. Plaintiff merely alleges generically that "Defendants . . . fraudulently misrepresented to . . . users and/or consumers of the drug, including Plaintiff, the safety and efficacy of [Bextra] . . . ." *E.g.*, Compl. ¶ 71. The Complaint fails to specify time, place, or content of *any* particular representations made by Mr. Dumoulin. Nor does the Complaint name the physician to whom the allegedly fraudulent misrepresentations were made. Because Plaintiff fails to plead these fraud-based claims with the requisite particularity, Plaintiff cannot state a claim. *See United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) ("this Court has endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards"); *Mixon v. Cason*, 622 So. 2d 918, 920 (Ala. 1993) ("The plaintiff did not plead with the specificity required by Rule 9(b)" and "the trial court properly dismissed").

26. Thus, no factual or legal basis exists for Plaintiff's claims against Mr. Dumoulin. Mr. Dumoulin is fraudulently joined and his citizenship cannot destroy this Court's diversity jurisdiction.

### III. PROCEDURAL REQUIREMENTS FOR REMOVAL

27. All other procedural requirements for removal have been met. On February 15, 2006, Defendants were served with a copy of the Summons and Complaint. This Notice of Removal is being filed within 30 days of the service of the Complaint and is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc. v. Michetti Pipe Springing, Inc.*, 526 U.S. 344, 354 (1999) (holding that the thirty day time period under removal statute begins to run from the date of formal service). All properly joined Defendants have consented to this Notice of Removal. 28 U.S.C. § 144(a); *see Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp 2d 1220, 1222 n.3 (M.D. Ala. 1999) (fraudulently or improperly joined defendants need not consent to removal). Although his consent is not necessary because he has been fraudulently and improperly joined, Mr. Dumoulin, who is represented by the undersigned, nonetheless consents in this removal.

28. The United States District Court for the Middle District of Alabama, Northern Division, embraces the county in which the state court action is now pending and thus this Court is a proper venue for this action pursuant to 28 U.S.C. § 81(b)(1) and 1441(a).

29. Copies of all process, pleadings and orders are collectively attached to this Notice of Removal at Exhibit 5 pursuant to 28 U.S.C. § 1446(a).

30. Defendants are filing written notice of this removal with the Clerk of the State Court in which the action is currently pending pursuant to 28 U.S.C. § 1446(d). Copies of the Notice of Filing Notice of Removal together with a copy of this Notice of Removal are being served upon Plaintiff's counsel pursuant to 28 U.S.C. § 1446(d).

31. If any question arises to the propriety of the removal of this action, Defendants respectfully request the opportunity to present a brief and oral argument in support of their position that this case is removable.

WHEREFORE, Defendants respectfully remove this action from the Circuit Court of Covington County, Alabama, bearing case #CV-06-32, to this Court, pursuant to 28 U.S.C. § 1441.

Respectfully submitted this 17th day of March, 2006.

/s/ Lawrence B. Clark
Lawrence B. Clark
M. Jason Asbell
*Attorneys for Defendants*

OF COUNSEL:
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
SouthTrust Tower, Suite 1600

420 Twentieth Street North
Birmingham, Alabama 35203
Telephone: (205) 328-0480
Facsimile: (205) 322-8007

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the above and foregoing on the below named by placing a copy of the same in the U.S. Mail on this the 17th day of March, 2006:

Mr. Jere L. Beasley
Mr. Andy D. Birchfield, Jr.
Mr. Navan Ward, Jr.
Mr. Paul Sizemore
Mr. Gerald B. Taylor, Jr.
BEASLEY, ALLEN CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, Alabama 36103-4160

_____
OF COUNSEL