# EXHIBIT 1

IN THE CIRCUIT COURT OF
COVINGTON COUNTY, ALABAMA

| | | |
|---|---|---|
| SYLVIA WINGARD as the Administrator | * | |
| of the Estate of GEORGE WINGARD | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL NO. CV-06-32 |
| | * | |
| PFIZER INC., a Delaware Corporation; | * | |
| PHARMACIA CORPORATION, | * | |
| a Delaware Corporation; MONSANTO | * | |
| COMPANY, a Delaware Corporation; | * | |
| G.D. SEARLE, LLC, a Delaware | * | |
| Corporation; ALEX DUMOULIN, JR | * | |
| And fictitious Defendants | * | |
| A, B, C and D being those persons, firms | * | |
| or corporations whose actions, inactions, | * | |
| fraudulent suppression, fraud, scheme to | * | TRIAL BY JURY IS REQUESTED |
| defraud and/or other wrongful conduct | * | |
| caused or contributed to the Plaintiff's | * | |
| injuries and damages, and whose true | * | |
| names and identities are presently | * | |
| unknown to the Plaintiff but will be | * | |
| substituted by amendment when | * | |
| ascertained, | * | FILED IN OFFICE |
| | * | |
| Defendants. | * | FEB 1 3 2006 |

## COMPLAINT

COMES NOW, Sylvia Wingard, (hereinafter "Plaintiff"), as the Administrator of the

Estate of George Wingard, decedent in an action against Pfizer, Inc., Pharmacia Corporation,

Monsanto Company, and G.D. Searle, LLC., and Alex Dumoulin, Jr. (hereinafter "Defendants"),

and for Plaintiff's cause of action against the Defendants states as follows:

### Statement Of The Parties

1.      This is a civil action brought by Plaintiff, Sylvia Wingard, on behalf of George

Wingard deceased for injuries resulting in a stroke at death.  Plaintiff was prescribed and used

1

the prescription medication Bextra (Valdecoxib). This action seeks monetary damages for the wrongful death caused by Bextra and ingested by George Wingard, the deceased.

2.     Plaintiff, Sylvia Wingard, is over the age of 19 years and is currently a resident of Covington County, Alabama.

3.     Defendant G. D. Searle LLC (hereinafter "Searle") was a subsidiary of Pharmacia Corporation and is upon information, knowledge and belief an Illinois Corporation. At all times relevant hereto, Searle, as a subsidiary of Pharmacia Corporation, was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Bextra (Valdecoxib). Defendant Searle is licensed and registered to do business in the State of Alabama. Defendant Searle can be served at its principle place of business: G. D. Searle, LLC; 4901 Searle Parkway; Skokie, Illinois 60077.

4.     Defendant Pharmacia Corporation (hereinafter "Pharmacia") is a Delaware Corporation with its principal place of business in New Jersey. At all times relevant to this action, Pharmacia was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Bextra (Valdecoxib). Defendant Pharmacia is licensed and registered to do business in the State of Alabama. Defendant Pharmacia can be served at its principle place of business: Pharmacia Corporation; 100 U.S. Highway 206 North; Peapack, New Jersey 07977.

5.     Defendant Monsanto Company (hereinafter "Monsanto") was the parent corporation of Pharmacia and is a Delaware Corporation. At all times relevant hereto, Monsanto, through its subsidiary companies, was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Bextra (Valdecoxib). Defendant Monsanto is licensed and registered to do business in the State of Alabama. Defendant Monsanto can be served at its principle place of business: Monsanto Company; 800 North Lindbergh Boulevard;

2

St. Louis, Missouri 63167.

6.      Defendant Pfizer, Inc. (hereinafter "Pfizer") is a Delaware corporation with its

principal place of business in New York.  At all times relevant hereto, Pfizer was in the business

of marketing, selling and distributing the pharmaceutical product Bextra (Valdecoxib).

Defendant Pfizer is licensed and registered to do business in the State of Alabama and may be

served through its registered agent at Pfizer, Inc., c/o The Corporation Company; 2000 Interstate

Park Drive, Suite 204; Montgomery, Alabama 36109.

7.      Defendant Alex Dumoulin, Jr. at all times material hereto was a sales

representative for Defendant G. D. Searle, Pharmacia, Monsanto and Pfizer (hereinafter

collectively referred to as "Pfizer") and was acting within the coarse and scope of their

employment with the Pfizer Defendant's.  Upon information and belief, Defendant Dumoulin is

a resident of Alabama and, at all times material hereto, was in the business of marketing selling

and distributing Bextra.  Defendant Dumoulin can be served at his home address:  5860 Main

Street, Apartment 506, Millbrook, AL 36054.

8.      Personal jurisdiction and subject matter jurisdiction are appropriate in this court

as to all Defendants, as all Defendants have done business in Covington County, Alabama, either

directly or by agent, and have thus availed themselves of this jurisdiction.

9.      The Plaintiff's claims accrued in whole or in part in Covington County, Alabama

and the Plaintiff resided in Covington County, Alabama at the time of Plaintiff's injury.  Plaintiff

ingested Bextra (Valdecoxib) in and while residing in Covington County, Alabama.  Some of

these Defendants are foreign corporations, which have been and are currently engaged in

business, directly or by authorized agent, in Covington County, Alabama.  Upon information and

belief, the Sales Representatives are individuals who, at all time material hereto, transacted

business in Covington City, Alabama. Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

10.     Pfizer Defendants marketed and distributed this drug in Covington County, Alabama. Defendants encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects in Covington County, Alabama. These Defendants aggressively marketed this drug directly to the consuming public through the use of various marketing mediums, including, but not limited to, print and television advertisements in Covington County, Alabama.

11.     Based on information and belief, Sales Representatives called on physicians, including Plaintiff's physician on numerous occasions at which times they presented fraudulent information regarding the safety and efficacy of Bextra and its harmful side effects, and/or fraudulently suppressed material information regarding the safety and efficacy of Bextra and its harmful side effects, and/or placed Bextra in the stream of commerce by providing Plaintiff's physician(s) samples of the drug Bextra.

12.     At all times material hereto, the Defendants Sales Representatives advertised, marketed, and/or promoted Bextra to Plaintiff's prescribing physician utilizing information known to fraudulently represent the safety and efficacy of Bextra and the Sales Representatives failed to warn of the known dangers and adverse events associated with the use of the drug Bextra.

13.     At all times material hereto, the Defendant Sales Representatives placed Bextra in the stream of commerce by distributing to physicians, including Plaintiff's physician, numerous samples of Bextra at varying doses.

14.     At all times relevant hereto, the Defendants actually knew of the defective nature

4

of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product in Covington County, Alabama. Defendants' conduct exhibits an entire want of care as to the safety of this product and a conscious disregard of the foreseeable harm caused by this product in Covington County, Alabama.

### Statement of the Facts

15.    At all times relevant hereto, Defendants were engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Bextra (Valdecoxib) throughout the United States.

16.    Bextra is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Defendants did manufacture, design, package, market and distribute this drug. Defendants encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

17.    Defendants, at all times relevant hereto, knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

5

18.    George Wingard was 44 years old on or about March 11, 2005, when he died from a stoke due to his use of Bextra (Valdecoxib).

19.    This Complaint seeks redress for damages sustained by George Wingard, resulting from the use of Bextra (Valdecoxib), manufactured and sold by the Defendants.

20.    The damages sought herein are the direct and proximate result of Defendants' wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Bextra (Valdecoxib).

21.    Had Defendants properly disclosed the risks associated with using Bextra (Valdecoxib), Plaintiff would not have taken it for treatment of pain associated with injury.

22.    This action is being brought in the Circuit Court of Covington County, because the amount of recovery sought exceeds the jurisdictional levels of all lower courts.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

23.    Plaintiff repeats and realleges each of the allegations contained in this Complaint.

24.    Defendants, directly or indirectly, negligently and/or defectively designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra (Valdecoxib).

25.    At all times material hereto, Defendants had a duty to users and/or consumers of Bextra (Valdecoxib), including Plaintiff, to exercise reasonable care in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Bextra (Valdecoxib).

26.    Defendants breached that duty and were negligent in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Bextra (Valdecoxib) in

6

that: Bextra (Valdecoxib) was defective when put on the market by Defendants; that with such defect, Bextra (Valdecoxib) was reasonably certain to be dangerous when put to normal use; and that Defendants failed to use reasonable care in designing or making Bextra (Valdecoxib) or in inspecting it for defects. Specifically, Defendants breached their duty by, among other things:

      a.     Failing to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, to the potential risks and serious side effects of the drug;

      b.     Failing to adequately and properly test and inspect the drug before placing the drug on the market;

      c.     Failing to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, stroke, heart attack, life threatening allergic and/or skin reactions and/or death.

      d.     Failing to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and other serious side effects associated with the drug, including, but not limited to, stroke, heart attack, life threatening allergic and/or skin reactions and/or death;

      e.     Failing to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

      f.     Failing to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug;

7

g.    Encouraging misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff, in order to make a profit from sales.

27.    Defendants knew or should have known that Bextra (Valdecoxib) caused unreasonably dangerous risks and serious side effects of which users and/or consumers of the drug, including Plaintiff, were not aware. Defendants nevertheless advertised, promoted, marketed, sold, distributed and/or supplied Bextra (Valdecoxib) knowing that there were safer methods for pain relief.

28.    As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiff sustained substantial injuries including, among other things, a stroke resulting in death. This injury caused extensive pain and suffering and severe emotional distress and negated Plaintiff's ability to enjoy life. In addition, Defendants' negligence caused Plaintiff to expend substantial sums of money for medical, hospital, and funeral expenses.

29.    As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish, which resulted in death.

30.    As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiff required reasonable and necessary health care treatment and services and had incurred expenses therefore. Defendants' negligence was a contributing cause of Plaintiff's death.

31.    By reason of the foregoing, Plaintiff was damaged by the negligence and wanton and willful recklessness of the Defendants. The amount sought herein exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this matter.

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY
## DEFECTIVE DESIGN

32.    Plaintiff repeats and realleges each of the allegations contained in this Complaint.

33.    At all times material hereto, Defendants have engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the drug Bextra (Valdecoxib), which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

34.    At all times material hereto, Bextra (Valdecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

      a.    When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiff, to risks which exceeded the benefits of the drug;

      b.    The drug was insufficiently tested;

      c.    The drug caused harmful side effects that outweighed any potential utility;

      d.    The drug was not accompanied by adequate labeling or instructions for use to fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with its use;

9

     e.    In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that Bextra (Valdecoxib) should not have been marketed in that condition.

35.    At all times the drug Bextra (Valdecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, users and/or consumers of the drug across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

36.    At all times, Plaintiff used Bextra (Valdecoxib) for its intended or reasonably foreseeable purpose.

37.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra (Valdecoxib), Plaintiff sustained substantial injuries including, among other things, a stroke, resulting in death. These injuries caused extensive pain and suffering and severe emotional distress and negated Plaintiff's ability to enjoy life. In addition, the defective and unreasonably dangerous condition of Bextra (Valdecoxib) caused Plaintiff to expend substantial sums of money for medical, hospital, and funeral expenses.

38.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra (Valdecoxib), Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish, which resulted in death.

39.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra (Valdecoxib), Plaintiff required reasonable and necessary health care treatment and service and had incurred expenses therefore. The defective and unreasonably dangerous condition of Bextra (Valdecoxib) was a contributing cause of Plaintiff's death.

40.    By reason of the foregoing, Plaintiff was damaged by the wanton and willful recklessness of the Defendants, who will be liable to Plaintiff.  The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## THIRD CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY
## FAILURE TO WARN

41.    Plaintiff repeats and realleges each of the allegations contained in this Complaint.

42.    Bextra (Valdecoxib) was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, to the dangerous risks and reactions associated with Bextra (Valdecoxib) when used for its intended or reasonably foreseeable purpose.  Those dangerous risks and reactions included, but were not limited to, stroke, heart attack, life threatening allergic and/or skin reactions, other serious and life threatening side effects, and/or death.

43.    At all times, Plaintiff's decedent used the drug for its intended or reasonably foreseeable purpose.

44.    Plaintiff's decedent could not have discovered any defect in the drug through the exercise of care.

45.    Defendants, as manufacturers of a prescription drug, is held to the level of knowledge of an expert in the field.

46.    The warnings that were given by Defendants were not accurate or clear and/or were ambiguous.

47.    Defendants had a continuing duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with the use of Bextra (Valdecoxib).

11

48.     As a direct, legal, proximate and producing result of Defendant's failure to warn, Plaintiff sustained harm, including, among other things, a stroke, resulting in death. These injuries caused extensive pain and suffering and severe emotional distress and negated Plaintiff's ability to enjoy life. In addition, Defendants' failure to warn caused Plaintiff to expend substantial sums of money for medical, hospital, and funeral expenses.

49.     As a direct, legal, proximate and producing result of Defendants' failure to warn, Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish, which resulted in death.

50.     As a direct, legal, proximate and producing result of Defendants' failure to warn, Plaintiff required reasonable and necessary health care treatment and services and had incurred expenses therefore. The Defendant's failure to warn was a contributing cause of Plaintiff's death.

51.     By reason of the foregoing, Plaintiff was damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY OF MERCHANTABILITY

52.     Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

53.     Defendants made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Bextra.

54.     Defendants, through their agents and/or sales representatives, made representations of the safety and efficacy of their product, Bextra.

55.     Bextra does not conform to the express representations made through the Defendants' advertising and marketing efforts

12

56.     Bextra does not conform to the express representations made by Defendants'
agents and/or sales representatives.

57.     As a direct, legal, proximate and producing result of the express representations
made by Defendants', through their advertising and marketing efforts, and by their agents and/or
sales representatives, Plaintiff sustained harm. Defendants' conduct in this matter was a
contributing cause of Plaintiff's stroke which resulted in death.

58.     Wherefore, this Plaintiff demands judgment against Defendants in such an
amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

59.     Plaintiff repeats and realleges each of the allegations contained in the Complaint.

60.     Defendant is a "merchant" as defined in Alabama Code § 7-2-104.

61.     Bextra (Valdecoxib) is a "good" as defined Alabama Code § 7-2-105.

62.     At the time that Defendants designed, tested, inspected, manufactured, assembled,
developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied
and/or distributed the drug Bextra (Valdecoxib), Defendants knew of the intended, reasonably
foreseeable and/or ordinary use of Bextra (Valdecoxib) and impliedly warranted the drug to be of
merchantable quality and safe and fit for such use.

63.     Plaintiff, in ingesting Bextra (Valdecoxib), reasonably relied upon the skill and
judgment of Defendants as to whether Bextra (Valdecoxib) was of merchantable quality and safe
and fit for its intended, reasonably foreseeable and/or ordinary use.

64.     In breach of the implied warranty given by Defendants, Bextra (Valdecoxib) was
not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary
use because the product was and is unmerchantable, in a defective condition and unreasonably

13

dangerous and unfit for the intended, reasonably foreseeable and/or ordinary purpose for which it was intended as described above.

65.    In breach of the implied warranty given by Defendants, Bextra (Valdecoxib) was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because, among other things:

a.    Use of Bextra (Valdecoxib) carried a risk of, among other things, a stroke, heart attack and/or death and other serious and life threatening side effects;

b.    Defendants failed to include adequate warnings with the drug that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects of the drug;

c.    Defendants failed to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the potential risks and serious side effects associated with the use of the drug.

66.    As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiff sustained substantial injuries including, among other things, a stroke, resulting in death. These injuries caused extensive pain and suffering and severe emotional distress and negated Plaintiff's ability to enjoy life. In addition, Defendants' breach of warranty caused Plaintiff to expend substantial sums of money for medical, hospital and funeral expenses.

67.    As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiff has been injured in health, strength and activity and suffered physical injuries as well as mental anguish, which resulted in death.

68.    As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiff required reasonable and necessary health care treatment and services and had incurred expenses therefore. Defendant's breach of warranty was a contributing case of Plaintiff's death.

14

69.     By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## SIXTH CAUSE OF ACTION
### FRAUD

70.     Plaintiff repeats and realleges each of the allegations contained in the Complaint.

71.     Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, the safety and efficacy of the drug and/or recklessly, knowingly, intentionally and fraudulently concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, material, adverse information regarding the safety and efficacy of Bextra (Valdecoxib).

72.     Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, with the intent that they reach users and/or consumers of the drug, including Plaintiff.

73.     Defendants either knew or should have known that the representations were false.

74.     Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of the drug with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting Bextra (Valdecoxib) as a pain reliever.

75.     Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Bextra (Valdecoxib) in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

15

76.     Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.  Specifically, Defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, that:

    a.     There had been insufficient studies regarding the safety and efficacy of the drug;

    b.     The drug was fully and adequately tested, despite knowing that there had been insufficient or inadequate testing of the drug;

    c.     Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious prothrombotic and allergic and/or skin reactions, including, but not limited to, adverse cardiovascular events and/or Stevens-Johnson Syndrome/Toxic Epidermal Necrolysis;

    d.     Defendants knew or should have known of reports of increased heart attacks, allergic and/or skin reactions and/or strokes associated with the use of the drug;

    e.     Defendants knew or should have known of the greatly increased risk of developing heart attacks, allergic and/or skin reactions and/or strokes associated with use of Bextra (Valdecoxib); yet, despite this they were downplaying the risk of the drug.

77.     The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representatives, employees, distributors, agents and/or detail persons.

78.     The misrepresentations of and/or active concealment by Defendants constitute a continuing tort.  Indeed, through Defendants' product inserts, Defendants continued to misrepresent the potential risks and serious side effects associated with the use of Bextra

(Valdecoxib). Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of Bextra (Valdecoxib) in a timely manner, yet they failed to provide such warning.

79.     Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Bextra (Valdecoxib) to Plaintiff's detriment.

80.     As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff sustained substantial injuries including, among other things, a stroke, resulting in death. These injuries caused extensive pain and suffering and severe emotional distress for Plaintiff, and negated Plaintiff's ability to enjoy life. In addition, the misrepresentations of Defendants caused Plaintiff to expend substantial sums of money for medical, hospital, and funeral expenses.

81.     As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff has been injured in health, strength and activity and suffered physical injuries as well as mental anguish, which resulted in death.

82.     As a result of Defendants' fraud, Plaintiff suffered a stroke resulting in death.

83.     As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff required reasonable and necessary health care treatment and service and had incurred expenses therefore.

84.     By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

85.    Plaintiff repeats and realleges each of the allegations contained in the Complaint.

86.    Defendants negligently misrepresented or failed to exercise reasonable care in representing to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, the safety and efficacy of the drug and/or negligently concealed or failed to exercise reasonable care by concealing and failing to disclose to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, material, adverse information regarding the safety and efficacy of Bextra (Valdecoxib).

87.    Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, with the intent that they reach users and/or consumers of the drug, including Plaintiff.

88.    Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Bextra (Valdecoxib) in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

89.    Defendants either knew or should have known that the representations were false.

90.    Defendants knew or should have known that the misrepresentations and/or omissions concerning the safety and efficacy of the drug would be relied upon by the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, in selecting Bextra (Valdecoxib) as a pain reliever.

91.    Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.  Specifically, Defendants misrepresented to and/or actively concealed from

18

the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, that:

        a.      There had been insufficient studies regarding the safety and efficacy of the drug;

        b.      The drug was fully and adequately tested, despite the fact that there had been insufficient or inadequate testing of the drug;

        c.      Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious adverse cardiovascular events, allergic and/or skin reactions and strokes;

        d.      Defendants knew or should have known of reports of strokes associated with the use of the drug;

        e.      Defendants knew or should have known of the greatly increased risk of heart attacks, strokes, life threatening allergic and/or skin reactions and/or death and other serious and life threatening side effects associated with the drug; yet, despite this was downplaying the risks of the drug.

92.     The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, their sales representatives, employees, distributors, agents and/or detail persons.

93.     The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continued to misrepresent the potential risks and complications associated with Bextra (Valdecoxib). Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of Bextra (Valdecoxib) in a timely manner, yet it failed to provide such warning.

94.    Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Bextra (Valdecoxib) to Plaintiff's detriment.

95.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff sustained harm, including, among other things, a stroke, resulting in death. These injuries have caused extensive pain and suffering and severe emotional distress and negated Plaintiff's ability to enjoy life.  In addition, the misrepresentations of Defendants caused Plaintiff to expend substantial sums of money for medical, hospital, and funeral expenses.

96.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish, which resulted in death.

97.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff required reasonable and necessary health care treatment and service and had incurred expenses therefore.

98.    As a result of the negligent misrepresentations of the Defendants, Plaintiff suffered a stroke resulting in death.

99.    By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of these Defendants who will be liable to Plaintiff.  The amount sought herein exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter.

## EIGHTH CAUSE OF ACTION
## WRONGFUL DEATH

100.    Plaintiff repeats and re-alleges each of the allegations contained in this Complaint.

101.    Plaintiff brings this wrongful death count pursuant to Alabama Code §6-5-410.

102.    As a direct and proximate result of the conduct of Defendants and/or the defective nature of the product as outlined above, Plaintiff's decedent, George Wingard, suffered bodily

20

injury and resulting pain and anguish, loss of capacity of the enjoyment of life, shortened life expectancy, expenses of hospitalization, medical nursing care and treatment, loss of earnings, loss of ability to earn money and eventually, death.

103.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has incurred hospital, nursing, and medical expenses.  Plaintiff has incurred hospital, nursing, medical, funeral and estate administration expenses as a result of his decedent's death.  Plaintiff, Wrongful Death Beneficiaries, bring this claim on behalf of her decedent's lawful beneficiaries for these damages and for all pecuniary losses sustained by said beneficiaries.

104.    By reason of the foregoing Plaintiff, on behalf of her decedent, George Wingard, demands judgment against Defendants for damages, both compensatory and punitive, interest, attorneys' fees, costs of suit as provided by law, and such other relief as the Court may deem just and equitable.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiff recovers damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rates, and punitive damages, and that Plaintiff has such other and further relief, both general and special, at law and in equity, to which Plaintiff may be justly entitled under the facts and attending circumstances.

## DEMAND FOR JURY TRIAL

COME NOW Plaintiff and demands a trial by jury on all issues presented herein.

Signed this _10th_ day of _February_, 2006.

21

JERE L. BEASLEY (BEA020)
ANDY D. BIRCHFIELD, JR. (BIR006)
NAVAN WARD, JR. (WAR062)
PAUL SIZEMORE (SIZ004)
GERALD B. TAYLOR, JR. (TAY026)

**OF COUNSEL:**

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 telephone
(334) 954-7555 facsimile

22